**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **HAROLD EUGENE WEBB,** § | |
| § | |
| **Plaintiff** § | |
| § | |
| v. § | Civil Action No. 3:09-CV-28-P (BH) |
| § | |
| **COMMISSIONER OF SOCIAL** § | |
| **SECURITY ADMINISTRATION,** § | |
| § | |
| **Defendant.** § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to *Special Order No. 3-251*, this case was automatically referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation for disposition. Before the Court are *Plaintiff's Motion for Summary Judgment* ("Pl. Mot."), filed April 3, 2009 (doc. #10); *Commissioner's Motion for Summary Judgment* ("Def. Mot."), filed April 30, 2009 (docs. # 11-12); and *Plaintiff's Reply to Brief of Defendant*, filed May 26, 2009 (doc. #13). Based on the evidence, the relevant filings and applicable law, *Plaintiff's Motion for Summary Judgment* should be **GRANTED,** *Commissioner's Cross-Motion for Summary Judgment* should be **DENIED**, and the case should be remanded to the Commissioner for further proceedings.

### I. BACKGROUND[1]

**A.     Procedural History**

Harold Eugene Webb ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his claim for disability benefits under

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

Title II of the Social Security Act. On October 19, 2005, Plaintiff filed an application for disability benefits. (Tr. at 44-45, 75-76). Plaintiff claimed he was disabled due to a low back injury that occurred on December 21, 2002. (Tr. at 75). Subsequently, he was treated for prostate cancer and depression. (Tr. at 318, 500). Plaintiff's application was denied initially and upon reconsideration. (Tr. at 46-50, 52-54). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 55). A hearing, at which Plaintiff personally appeared and testified, was held on December 13, 2007. (Tr. at 32-43). On February 21, 2008, the ALJ issued his decision finding Plaintiff not disabled. (Tr. at 20-29). The Appeals Council denied Plaintiff's request for review on November 7, 2008, concluding that the contentions raised in Plaintiff's request for review did not provide a basis for changing the ALJ's decision. (Tr. at 1-4). Thus, the ALJ's decision became the final decision of the Commissioner. (Tr. at 1). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g) on January 7, 2009.

**B.     Factual History**

    **1.     Age, Education, and Work Experience**

Plaintiff was born in 1954. (Tr. at 75). At the time of the hearing before the ALJ, he was fifty-three years old. (Tr. at 35). Plaintiff graduated from high school. *Id*. His past relevant work experience included warehouse work and forklift operation. (Tr. at 41). Plaintiff last worked on December 21, 2002. (Tr. at 90, 411).

    **2.     Medical Evidence**

The bulk of the lengthy medical record discusses Plaintiff's "lumbar disc disruption L4-5." Since the dispositive issues in this case are the ALJ's consideration of Plaintiff's prostate cancer and

depression, only the records relevant to those issues are summarized.[2]

On December 18, 2006, Plaintiff had a biopsy of the prostate at Parkland Hospital and was found to have prostatic adenocarcinoma 4 + 4 with perineural invasion (Gleason's 8 prostate cancer). (Tr. at 623-25). On April 5, 2007, Plaintiff underwent a right radical retropubic prostatectomy and a bilateral pelvic lymph node dissection to treat his prostate cancer at Parkland Hospital. (Tr. at 316-18). Plaintiff's pathology report indicated positive margins at the seminal vesicle. (Tr. at 529). A subsequent cancer staging evaluation demonstrated seminal vesicle invasion. (Tr. at 518).

On April 25, 2007, Plaintiff returned to Parkland Hospital to have his catheter removed and was prescribed diapers for his "leaking urine." (Tr. at 529). He was informed that this was normal due to his surgical procedure. *Id.* Although Plaintiff reported slow improvement with incontinence and urinary frequency when he visited Dr. Allen F. Morey, M.D., on July 23, 2007, his incontinence had worsened by September 7, 2007, when Dr. Morey saw him again. (Tr. at 503, 477). During this September visit, Dr. Morey noted the pathology report showed the cancer extending to the surface of the right seminal vesicle. (Tr. at 477). It was uncertain however, whether this referred to the surgical margin. *Id.* On August 1, 2007, and October 19, 2007, when seen by Dr. J. John Stasikowski, who regularly treated him for low back problems, Plaintiff reported he was wearing diapers due to his struggle with urinary incontinence. (Tr. at 417, 409).

On June 29, 2007, Plaintiff visited Parkland Hospital, complaining of depression. (Tr. at 514). On July 25, 2007, Dr. Yolanda Kraynick, Ph.D., administered a mental status examination of

---

[2] The medical records regarding Plaintiff's back injury and subsequent treatments are lengthy, but the records regarding Plaintiff's prostate cancer and depression are rather brief.

Plaintiff. (Tr. at 497-500). Plaintiff stated he had been depressed since the prostate cancer surgery and further complained of diminished interest, disturbed sleep, excessive guilt and worthlessness, fatigue, and change in appetite. (Tr. at 497). Plaintiff had been taking Paxil. (Tr. at 498). He was diagnosed with depression due to cancer, with a Global Assessment of Functioning ("GAF") score of 51. (Tr. at 500). He continued to be monitored for depression, with doctor visits in late August 2007. (Tr. at 493, 483).

### 3. Hearing Testimony

A hearing was held before the ALJ on December 13, 2007. (Tr. at 32). Plaintiff was unrepresented but personally appeared and testified. *Id.* Testimony was also obtained from a vocational expert witness. (Tr. at 32-33).

#### a. <u>Plaintiff's Testimony</u>

Plaintiff testified that he was fifty-three years old, unmarried, and had graduated from high school. (Tr. at 35). His only job was as a warehouse worker, which he could no longer perform because he was unable to lift heavy weight. (Tr. at 34-35). He had received workers' compensation for a back injury that occurred while working on the job. (Tr. at 36). Plaintiff continued to visit a doctor who had recommended surgery for his back. *Id.* When asked about his pain, Plaintiff said when he walked or applied pressure, he felt pain in his lower back and in the back of his left leg. (Tr. at 38). The pain was especially bad in the mornings, and he took muscle relaxers daily for relief. *Id. S*ignificant walking resulted in a limp and leg numbness. (Tr. at 40).

Additionally, Plaintiff testified he was diagnosed with prostate cancer and had surgery in April of 2007. He was not doing well and his cervical vesicle, which had not been removed, was affected. (Tr. at 37). The doctors were considering chemotherapy. *Id.*

Plaintiff also testified that he felt depressed due to the many things that had occurred in his life, and he had been taking a sleeping pill for three months. *Id.* Even though people found him to be calmer since taking the medication, he was still troubled. (Tr. at 39). Psychiatrists told him he was depressed because of his physical state. *Id.* Plaintiff was worried he could no longer take care of himself, which he was used to being able to do. (Tr. at 39-40). He lived alone and did not drive, and his two children helped him with chores. (Tr. at 40). He was unable to perform housework, including cleaning and laundry, and his daughter cooked and shopped for him. (Tr. at 41).

### b. **VE testimony**

A vocational expert ("VE"), Dr. M. Dillon Snowden, also testified at the hearing. (Tr. at 67). In response to a question from the ALJ, the VE classified Plaintiff's past work history of warehouse work and forklift operation as "medium work and semi-skilled with an SVP of 3." (Tr. at 41). The VE testified that someone limited to light work would be unable to perform that job because of the heavy lifting. *Id.* When provided with a hypothetical question assuming a limitation to light work exertion, with only occasional stooping or crouching, the VE stated "[t]here would be unskilled work that could be performed." (Tr. at 42). The VE offered examples of such work including bench assembler, with 46,000 jobs in Texas and 890,000 jobs in the national economy; bench inspector, with 19,000 jobs in Texas and 330,000 jobs in the national economy; and machine tender, with 10,000 jobs in Texas and 165,000 jobs in the national economy. *Id.*

### C. **ALJ's Findings**

The ALJ issued his decision denying benefits on February 21, 2008. (Tr. at 20-29). The ALJ found Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2007. (Tr. at 22, ¶ 1). Plaintiff did not engage in substantial gainful activity during the period from

his alleged onset date of December 21, 2002, through the date last insured of December 21, 2007. (Tr. at 22, ¶ 2). Plaintiff had the severe impairment of "lumbar disc disruption L4-5." (Tr. at 22, ¶ 3).

Regarding Plaintiff's prostate cancer, the ALJ said that the examinations that followed the prostatectomy were normal, and Plaintiff had "experienced minimal, if any, functional limitations associated with prostate cancer." (Tr. at 23). The ALJ found that Plaintiff's prostate cancer was a non-severe impairment. *Id.*

Concerning Plaintiff's mental impairment, the ALJ found it did "not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." *Id.* Upon consideration of the "four broad functional areas set out in the disability regulations," or the "paragraph B" criteria, Plaintiff's mental impairment was deemed non-severe. *Id.* There was no evidence supporting that Plaintiff's daily living activities were limited as a result of the mental impairment. *Id.* Specifically, "interference in daily living activities [was] because of back pain, not depression." *Id.* Plaintiff had no limitations in the areas of: social functioning, concentration, persistence and pace, or decompensation. *Id.*

The ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 24, ¶ 4). Specifically, Plaintiff did not meet the requirements for Listing 1.04 (disorders of the spine). *Id.*

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, including lifting and carrying up to 20 pounds occasionally and 10 pounds frequently; sitting, standing, and walking for six hours of an eight hour work day, with normal breaks; and occasionally

stooping and crouching. (Tr. at 24, ¶ 5). With regard to Plaintiff's pain symptoms, the ALJ noted symptoms alone could not be the basis for finding a disability "unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment." (Tr. at 26). The ALJ noted that "despite outrageous pain complaints," Plaintiff was frequently out of town and missed his physical therapy sessions. *Id.*

Although Plaintiff was unable to perform his past relevant work, the ALJ considered Plaintiff's RFC and relevant vocational characteristics, concluding that the Medical-Vocational Rules directed a finding of "not disabled." (Tr. at 27, ¶ 6; 28, ¶ 9). Lastly, the ALJ determined there were a substantial number of jobs existing in the national economy that Plaintiff could perform, including bench assembler, bench inspector and machine tender. (Tr. at 28, ¶ 10).

## II. ANALYSIS

### A. <u>Legal Standards</u>

#### 1. **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. 42 U.S.C. § 405(g), 1383(C)(3); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is

appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id*. Thus, the Court may rely on decisions in both areas, without distinction, when reviewing an ALJ's decision. *See id*.

### 2. Disability Determination

To be entitled to social security benefits, a claimant must prove he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## B. Issues for Review

Plaintiff presents the following issues for review[3]:

(1) The ALJ failed to consider all of the Plaintiff's severe impairments (Pl. Mot. at 9);

(2) The Commissioner failed to properly consider opinion evidence of record (*Id.* at 13); and

---

[3] The issues listed are the issues found in the "Argument" section, which differ from the issues listed in the "Issue" section.

(3) The Commissioner failed to establish the existence of other work which the Plaintiff can perform. (*Id.* at 15).

## C. Issue One: Severe Impairment

Plaintiff first contends that the ALJ erred by failing to include prostate cancer and depression as severe impairments at step two of the sequential five-step analysis. (Pl. Mot. at 9-13).

A severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.152(c). The Fifth Circuit has held that a literal application of this regulation would be inconsistent with the Social Security Act because the regulation includes fewer conditions than indicated by the statute. *Stone v. Heckler*, 752 F.2d 1099, 1104-05 (5th Cir. 1985). In the Fifth Circuit, an impairment is not severe "only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Id.* at 1101. Further, the determination of severity may not be "made without regard to the individual's ability to perform substantial gainful activity." *Id.* at 1104. To ensure that the regulatory standard for severity does not limit a claimant's rights, the Fifth Circuit held in *Stone* that it would assume the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used." *Id.* at 1106; *accord Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *Eisenbach v. Apfel*, 2001 WL 1041806, at *6 (N.D. Tex. Aug. 29, 2001) (Boyle, J.). Notwithstanding this presumption, the Court must look beyond the use of the "magic words" to determine whether the ALJ applied the correct severity standard. *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986). Unless the correct standard of severity is used, the claim

must be remanded to the Secretary for reconsideration. *Stone*, 752 F.2d at 1106.

In this case, the ALJ cited the Social Security Regulation's definition for a "severe impairment," stating that "[a]n impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." (Tr. at 21) (citing 20 C.F.R. § 404.1520(c)). *Stone*, however, states that "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal impact on the individual that it would not be expected to interfere with the individual's ability to work." *Stone*, 752 F.2d at 1101. While the difference between the two statements appears slight, according to the standard applied by the ALJ, a severe impairment could have at most a minimal effect on a claimant's ability to work. In contrast, *Stone* provides no allowance for a minimal interference on a claimant's ability to work. The ALJ's construction is not an express statement of the *Stone* standard, and he did not explicitly reference the standard set forth in *Stone* or a similar opinion applying the Fifth Circuit's standard. *See id.* This difference, coupled with the ALJ's failure to cite *Stone* or a similar opinion, leads the Court to conclude that the ALJ applied an incorrect standard of severity at step two.

Defendant contends Plaintiff's prostate cancer and depression were considered adequately at step two, and the evidence supports the ALJ's findings that the impairments were not severe. (Def. Mot. at 5). However, judicial review entails a proper review of whether the Commissioner applied the proper legal standard in addition to whether the substantial evidence supports the position. *Greenspan*, 38 F.3d at 236. Secondly, the record shows evidence which might support a finding of severe impairment, especially considering the low bar at this step. In discussing the prostate cancer, the ALJ stated that the "claimant has experienced minimal, if any, functional limitations associated

- 11 -

with prostate cancer." (Tr. at 23). The ALJ failed to mention Plaintiff has worn diapers for incontinence since shortly after his April 2007 prostatectomy or to indicate the impact this might have on Plaintiff's ability to perform basic work activities. (*See* Tr. at 23; 328, 409, 477). The Court cannot speculate how the workplace might accommodate Plaintiff's incontinence; it can only scrutinize the record for substantial evidence and determine whether the Commissioner applied proper legal standards. *Greenspan*, 38 F.3d at 236. Thus, the Court finds a lack of substantial evidence to support the ALJ's decision that Plaintiff's incontinence was not severe within the meaning of the Social Security Regulations. *Leggett*, 67 F.3d at 464; *Greenspan*, 38 F.3d at 236.

With respect to Plaintiff's depression, he was diagnosed with depression due to cancer with a GAF score of 51.[4] (Tr. at 500). The record indicates he had been depressed since the prostate cancer surgery and further complained of diminished interest, disturbed sleep, excessive guilt and worthlessness, fatigue, and change in appetite. (Tr. at 497). Plaintiff had been taking Paxil. (Tr. at 498). The ALJ deemed Plaintiff's depression as non-severe, because it did "not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." (Tr. at 23). The ALJ applied the incorrect standard set forth in *Stone*, which is "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal impact on the individual that it would not be expected to interfere with the individual's ability to work." *Stone*, 752 F.2d at 1101.

Defendant relies on *Harrell v. Bowen*, a Fifth Circuit case from 1988, claiming the *Stone* standard does not apply if the decision was made at a subsequent step to deny benefits. (Def. Mot.

---

[4] The Court notes that the GAF score alone is insufficient to support a finding of disability. *Davis v. Astrue*, 2008 WL 517238, at *3 n.7 (N.D. Tex. Feb. 27, 2008) (federal courts have declined to find a strong correlation between an individual's GAF score and the ability or inability to work) (citing *Heinritz v. Barnhart*, 2006 WL 2294850, at *3 (10th Cir. Aug.10, 2006) and *Quaite v. Barnhart*, 312 F.Supp.2d 1195, 1200 (E.D. Mo.2004)). The question at step 2, however, is whether the GAF score provides substantial evidence to support a finding of a severe impairment, not whether it provides substantial evidence for an ultimate determination of disability.

at 7). The Fifth Circuit, however, has found that a failure to use the correct standard of severity is sufficient to remand for further consideration even when the denial of benefits occurred subsequent to step two of the sequential process. *See Loza*, 219 F.3d at 393, 398-99 (step five adjudication).

Generally, appeals from administrative agencies of a procedural error will not lead to a vacated judgment "unless the substantial rights of a party have been affected." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam)). However, the ALJ's failure to apply the *Stone* standard was a legal error, not a procedural error. The Fifth Circuit left the lower courts no discretion to determine whether such an error was harmless. Rather, the court mandated that "[u]nless the correct standard is used, the claim *must* be remanded to the Secretary for reconsideration." *Stone*, 752 F.2d at 1106 (emphasis added). Because the ALJ erred at an early stage of the proceedings, and the step two errors necessarily impact the three remaining steps of the sequential disability determination process, the Court does not consider Plaintiff's remaining issues concerning those three steps.

### III.   RECOMMENDATION

The Court **RECOMMENDS** that *Plaintiff's Motion for Summary Judgment* be **GRANTED**, *Commissioner's Motion for Summary Judgment* be **DENIED**, and the decision of the Commissioner be **REVERSED** and the case be **REMANDED** for reconsideration.

On remand, the ALJ must, as part of his step two analysis, determine whether Plaintiff's prostate cancer and depression constitute severe impairments within the meaning set forth by the Fifth Circuit in *Stone v. Heckler*, 752 F.2d at 1101. If the ALJ determines these impairments are severe, the ALJ should proceed through the sequential steps of the disability determination process.

**SO RECOMMENDED**, on this 3rd day of June, 2009.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE